UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-0102 (PJS/DTS) |
| Plaintiff, | |
| v. | ORDER |
| RYAN ALLEN MANNING, | |
| Defendant. | |

Melinda A. Williams, UNITED STATES ATTORNEY'S OFFICE, for plaintiff.

Reynaldo A. Aligada, Jr., OFFICE OF THE FEDERAL DEFENDER, for defendant.

Defendant Ryan Manning is charged with possessing, producing, and attempting to produce child pornography. Manning moved to suppress evidence found when law-enforcement officers searched his home pursuant to a search warrant. Manning also moved to suppress statements that he made to law-enforcement officers during the search. This matter is before the Court on Manning's objection to the November 1, 2018 Report and Recommendation ("R&R") of Magistrate Judge David T. Schultz. Judge Schultz recommends denying Manning's motions to suppress. The Court has conducted a de novo review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Based on that review, the Court agrees with Judge Schultz that Manning's suppression motions should be denied, although the Court's reasoning differs somewhat from Judge

Schultz's. The Court therefore adopts the R&R to the extent that it is consistent with this order.

I. BACKGROUND

The Court will assume familiarity with the R&R, including its description of the facts. *See* ECF No. 55 [R&R] at 2-5, 12-14. The challenged search warrant was issued on the basis of an affidavit submitted by Special Agent Dawn Johnson of the Minnesota Bureau of Criminal Apprehension ("BCA"). To briefly summarize the contents of that affidavit:

Omegle is an online social media platform that "randomly pairs users in one-on-one chat sessions where they chat anonymously." ECF No. 33-1 at 5. Through the use of webcams and microphones, Omegle users may both see and speak to each other. ECF No. 33-1 at 5. Omegle users may also use third-party software to "transmit pre-recorded video." ECF No. 33-1 at 5. Omegle "automatically captures snapshots from users' webcam video streams" for moderation teams to review. ECF No. 33-1 at 5. If Omegle moderators spot what appears to be child pornography, they forward the relevant snapshots to a "CyberTipline" run by the National Center for Missing and Exploited Children ("NCMEC"). *See* ECF No. 33-1 at 4-5. NCMEC analysts "examine and evaluate the content" of CyberTips, add "related information" that might assist law

enforcement, and then "provide all information to the appropriate law enforcement agency for investigation." ECF No. 33-1 at 4.

In August 2016, the BCA received a CyberTip from NCMEC involving apparent child pornography flagged by Omegle. ECF No. 33-1 at 4. The CyberTip reported that the snapshots came from a user identified as:

>ESP User ID: YS7SG2SL
>IP Address: 50.188.79.76 (Upload)
>07-19-2016 00:33:35 UTC

ECF No. 33-1 at 4. The CyberTip included twelve snapshots of a video stream intercepted by Omegle's moderation team. Agent Johnson (who specializes in investigating "crimes against children" and "crimes related to predatory offenders") reviewed all twelve snapshots. ECF No. 33-1 at 4-5. Through further investigation and visual surveillance, Agent Johnson traced the Omegle account to Manning. *See* ECF No. 33-1 at 4-6.

On December 15, 2016, Agent Johnson applied for a warrant to search Manning's residence, vehicles, and belongings. ECF No. 33-1 at 1-3, 10. As noted, Agent Johnson submitted an affidavit in support of her application. Judge Allen Oleisky issued the warrant the same day. ECF No. 33-1 at 13. The BCA executed the warrant on the following day, ECF No. 55 at 5, and discovered evidence of child pornography. During the search of his home, Manning made several incriminating statements in response to

questions asked by Agent Johnson. Manning made those statements after Agent Johnson told him that he was not in custody and not under arrest. Gov't Ex. 1A at 2.[1]

Manning now moves to suppress both the evidence found during the search of his home and the statements that he made to Agent Johnson.

II. ANALYSIS

*A. Motion to Suppress Evidence*

1. Standard of Review

This Court must give "great deference" to the probable-cause determination made by Judge Oleisky. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted). The Court must uphold Judge Oleisky's determination of probable cause as long as he had a "substantial basis" for concluding that the "search would uncover evidence of wrongdoing." *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). "When the [issuing judge] relied solely upon the supporting affidavit to issue the warrant, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citation omitted).

---

[1] At the motions hearing before Judge Schultz, the government entered into evidence an audio recording of the interview with Manning (Exhibit 1) and a transcript of that recording (Exhibit 1A). *See* ECF No. 42 at 10-11.

2. Merits

Manning argues that Agent Johnson's affidavit did not provide probable cause to believe that a search of his residence and belongings would uncover evidence of child pornography. ECF No. 48 at 1, 6-7. The Court disagrees.

"An affidavit establishes probable cause for a warrant if it sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States v. Mutschelknaus*, 592 F.3d 826, 828 (8th Cir. 2010) (cleaned up). "Determining whether probable cause exists at the time of the search is a 'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) (citation omitted). Probable cause "does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime." *Id.* (citation omitted).

Agent Johnson's affidavit provided strong evidence that two Omegle users had participated in a video chat during which child pornography had been transmitted. Agent Johnson described the CyberTip that Omegle sent to NCMEC after discovering that an Omegle user had streamed "apparent child pornography." ECF No. 33-1 at 4. Agent Johnson reviewed all twelve snapshots in the CyberTip and included in her affidavit a description of the snapshot depicting child pornography. *See* ECF No. 33-1

at 5. Agent Johnson's detailed description of that snapshot was sufficient to establish a fair probability that one Omegle user had transmitted child pornography to another in the course of a video chat. *See Mutschelknaus*, 592 F.3d at 828-29.

Moreover, Agent Johnson's affidavit provided strong evidence that Manning had been one of the two Omegle users involved in that video chat. As Agent Johnson explained in her affidavit, the CyberTip included an IP address that she traced to Manning's residence. *See* ECF No. 33-1 at 5-6. The CyberTip also contained eleven snapshots of a man that Agent Johnson "confident[ly]" identified as Manning. ECF No. 33-1 at 5-6. Agent Johnson's affidavit further connected Manning to the Omegle video chat by explaining that the snapshot showing child pornography being livestreamed came from the "same IP address" and the "same webcam" as the eleven snapshots of Manning. ECF No. 33-1 at 5. Taken together, these facts gave Judge Oleisky a substantial basis for concluding not only that Manning had participated in the video chat, but that he had streamed child pornography from his residence. *See United States v. Gray*, No. 13-CR-0256 (DSD/SER), 2014 WL 1415080, at *2 (D. Minn. Apr. 10, 2014) (finding probable cause where the "affidavit in support of the warrant" detailed the "activities of [the] investigators" and "connected their findings" to the defendant).

The R&R asserted that Agent Johnson had failed to clarify in her affidavit "whether the association of the image to Manning's IP address indicates that he was

transmitting the video at issue or merely viewing it." ECF No. 55 at 9 n.2.[2] That is not accurate. As just noted, Agent Johnson provided evidence that child pornography had been streamed from the same webcam and the same IP address as the images of Manning. That makes it fairly clear that Manning was doing the transmitting, and the other user was doing the viewing. In any event, even if Agent Johnson had provided no evidence whatsoever about whether it had been Manning or the other Omegle user who had been doing the transmitting, Judge Oleisky still had probable cause to issue the warrant. Agent Johnson explained in her affidavit that Omegle allows users to video chat "one-on-one." ECF No. 33-1 at 5. Based on that fact, Judge Oleisky knew that either Manning or the other Omegle user had been streaming the child pornography. Even if the evidence pointing to Manning as the transmitter of the child pornography were ignored, Judge Oleisky would nevertheless have known that there was a 50/50 chance that Manning was the Omegle user who had streamed the child pornography.

---

[2]Judge Schultz held that Judge Oleisky could infer from "the unique characteristics of the technology," "the nature of the medium," and "the image captured" that Manning had an affirmative interest in child pornography. ECF No. 55 at 8-9. Judge Schultz reached this conclusion notwithstanding his expressed uncertainty about whether Manning merely viewed the child pornography. To be clear: This Court does not believe that probable cause would have existed if Agent Johnson's affidavit merely provided evidence that Manning may have *viewed* a single child-pornography video during a single Omegle video chat. But, as the Court has explained, Agent Johnson's affidavit provided evidence that Manning had *streamed* child pornography from his home—which, in turn, provided probable cause that child pornography would be found in his home.

*See United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (allowing judges to draw "reasonable inferences" when determining if "probable cause exists to issue a warrant"). Probable cause exists even when there is *less* than a 50/50 chance of finding evidence of a crime. *See United States v. Carbajal*, 449 F. App'x 551, 554 (8th Cir. 2012). Obviously, then, Agent Johnson's affidavit provided probable cause that Manning had streamed the video. *See United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) ("[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark.").[3]

Manning next argues that the evidence in Agent Johnson's affidavit did not support a finding of probable cause because it was stale, given that at least five months (and perhaps much longer) had elapsed between the Omegle chat and the application for the warrant. "A warrant becomes stale if the information supporting the warrant is not 'sufficiently close in time to the issuance of the warrant and the subsequent search

---

[3]Manning argues that, even if there was evidence that he streamed an image of child pornography, the fact that he streamed a single image cannot support an inference that he was "a collector who would have child pornography at his residence." ECF No. 48 at 17. The Court disagrees. As the Eighth Circuit has held, probable cause to search a suspect's residence can be established even when law enforcement intercepts only one image of child pornography. *See, e.g., United States v. McArthur*, 573 F.3d 608 (8th Cir. 2009) (finding probable cause to issue a search warrant when law enforcement discovered a single laminated photograph of a nude child in the defendant's wallet); *see also United States v. Needham*, No. 13-CR-0111 (JRT/LIB), 2013 WL 4519414, at *9 (D. Minn. Aug. 26, 2013) ("[T]he Eighth Circuit has held that a single image of child pornography can suffice to provide probable cause to search a suspect's computer.").

conducted so that probable cause can be said to exist as of the time of the search.'" *United States v. Brewer*, 588 F.3d 1165, 1173 (8th Cir. 2009) (citation omitted). Staleness depends on "the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search." *United States v. Estey*, 595 F.3d 836, 840 (8th Cir. 2010) (citation omitted).

Agent Johnson's affidavit noted that the CyberTip was dated July 19, 2016 and had been transmitted from NCMEC to the BCA in August 2016. But neither Agent Johnson nor the CyberTip itself clarified whether July 19, 2016 was the date of the video chat, the date when the Omegle team reviewed the snapshots of the video chat, the date when Omegle transmitted the CyberTip to NCMEC, or some other date. And thus, as Manning argues, Judge Oleisky could not have known precisely how much time had elapsed between the video chat and the search-warrant application.

The Court does not believe that, under Eighth Circuit precedents, the absence of this information meant that Agent Johnson's affidavit failed to establish probable cause. Child pornography cases are unique. Knowing that a person possessed illegal drugs several months ago may not (in and of itself) provide probable cause to believe that the same person possesses illegal drugs today, as those who possess illegal drugs typically use or sell them promptly. *See United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) ("[I]nformation of an unknown and undetermined vintage relaying the location of

-9-

mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation."). But knowing that a person possessed child pornography several months ago generally does (in and of itself) provide probable cause to believe that the same person possesses child pornography today, given the "compulsive nature of the crime . . . and the well-established hoarding habits of child pornography collectors[.]" *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016).

Because those who are interested in child pornography generally maintain and cultivate their collections, the Eighth Circuit has consistently held that "evidence developed within several months of an application for a search warrant for a child pornography collection and related evidence is not stale." *Estey*, 595 F.3d at 840 (five months); *see also United States v. Lemon*, 590 F.3d 612, 615-16 (8th Cir. 2010) (18 months); *United States v. Horn*, 187 F.3d 781, 786-87 (8th Cir. 1999) (three or four months). Indeed, the Eighth Circuit has upheld warrants executed *years* after the discovery of evidence of child pornography. *See, e.g.*, *Notman*, 831 F.3d at 1088 (several years); *see also United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (three years).

Judges are supposed to use common sense in assessing whether probable cause exists at the time that a warrant is sought. *Donnelly*, 475 F.3d at 954. Given that both Omegle and NCMEC were attempting to assist law enforcement in apprehending

someone who had streamed child pornography during a video chat, common sense would suggest that the period of time between the video chat and the search-warrant application did not exceed the capacious time frames approved by the Eighth Circuit in child-pornography cases. Moreover, the Eighth Circuit has upheld search warrants for child pornography based on supporting affidavits containing *no dates whatsover* when it was reasonable to conclude that evidence would be discovered because of the suspect's demonstrated interest in child pornography. *See, e.g.*, *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) ("Thus, the affidavit's failure to include the date of that encounter is not fatal to a determination that probable cause existed . . . ."); *see also United States v. Granley*, No. 16-CR-0196 (ADM/LIB), 2016 WL 11186990, at *9 (D. Minn. Nov. 2, 2016) (holding that an affidavit supplied probable cause even though it did not "contain the dates of the reports or the dates of the occurrences described therein").

Manning argues that Judge Oleisky had no basis for concluding that Manning had a demonstrated interest in child pornography. The Court disagrees. Agent Johnson's affidavit provided evidence that Manning had either (1) livestreamed the sexual abuse of a young child by an adult woman or (2) streamed a pre-recorded video depicting such abuse. Surely a judge can reasonably infer that a man who would stream a depiction of the sexual molestation of a child to a stranger that he recently met through Omegle would have at least as much interest in collecting child pornography

as someone who had downloaded child pornography from the Internet or sought child pornography in a chat room. *See United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010) ("There is an intuitive relationship between acts such as child molestation or enticement and possession of child pornography. Child pornography is in many cases simply an electronic record of child molestation. Computers and internet connections have been characterized . . . as tools of the trade for those who sexually prey on children."); *United States v. Lemon*, No. 08-CR-0246 (DSD/SRN), 2008 WL 4999235, at *2 (D. Minn. Nov. 19, 2008) ("Individuals who seek sexual gratification involving children often store images of child pornography on their computers, often for months or years.").

Agent Johnson's expert testimony further bolstered the conclusion that Manning had an ongoing interest in child pornography. Courts consider "[t]he source" and "credibility" of the evidence supporting a search warrant. *United States v. Humphrey*, 140 F.3d 762, 764 (8th Cir. 1998). Qualified law-enforcement testimony "about the extent to which pedophiles retain child pornography" should be given "substantial weight" in probable-cause determinations. *Lemon*, 590 F.3d at 615. Agent Johnson—drawing on her 13 years' experience investigating crimes against children and crimes related to predatory offenders—testified in her affidavit that "individuals who are sexually attracted to children tend to have images and or videos of children engaged in sexually-explicit conduct" stored on electronic devices in their homes. ECF

No. 33-1 at 8-9. She further testified that collectors "often retain these images for the purpose of reliving the incident" and "maintain them for several years." ECF No. 33-1 at 8. Viewing the evidence of Manning's conduct through the lens of her expertise about the tendencies of child predators, Agent Johnson predicted that child pornography would be found at Manning's residence.

For these reasons, the Court finds that Judge Oleisky had a substantial basis for finding that Agent Johnson's affidavit established probable cause to search Manning's residence and belongings.[4]

### B. Motion to Suppress Statements

Manning also seeks suppression of statements that he made to Agent Johnson while his house was being searched. Both parties agree that Agent Johnson interrogated Manning without first providing *Miranda* warnings. Thus, "[t]he critical question is whether the interrogation occurred in a custodial setting." *United States v. Jones*, 630 F.2d 613, 615 (8th Cir. 1980).

---

[4]The R&R concludes that, even if the search violated the Fourth Amendment, the evidence should not be suppressed because of the good-faith exception to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897 (1984). ECF No. 55 at 11-12. Manning argues that the good-faith exception does not apply because the affidavit in support of the warrant was so bare-bones and speculative that no official could reasonably believe probable cause existed. ECF No. 48 at 20-24. For the reasons explained above, the Court disagrees with Manning and agrees with Judge Schultz that the good-faith exception would apply. After all, three judges—a federal district judge, a federal magistrate judge, and a state trial judge—have now reviewed the affidavit and found that it provided probable cause to search Manning's home.

A suspect is in custody when "there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Czichray*, 378 F.3d 822, 826 (8th Cir. 2004) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983)). "To determine whether a suspect was in custody," the Court asks "whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave or cause the agents to leave." *United States v. Laurita*, 821 F.3d 1020, 1024 (8th Cir. 2016) (citation omitted).

The Eighth Circuit has identified six non-exclusive indicia of custody. These indicia include:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and] (6) whether the suspect was placed under arrest at the termination of the questioning.

*Id*. The presence of any of the first three "mitigating" factors weighs against finding custody whereas the presence of the last three "aggravating" factors supports a custody determination. *See id.* at 1024-25. Although these factors are helpful, custody "cannot

be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Czichray*, 378 F.3d at 827.

The presence of the first mitigating factor strongly weighs against finding that Manning was in custody. "That a person is told repeatedly that he is free to terminate an interview is powerful evidence that a reasonable person would have understood that he was free to terminate the interview." *Id.* at 826. "So powerful . . . that no governing precedent of the Supreme Court or [the Eighth Circuit] . . . holds that a person was in custody after being clearly advised of his freedom to leave or terminate questioning." *United States v. Giboney*, 863 F.3d 1022, 1028 (8th Cir. 2017) (citation omitted). Agent Johnson began her questioning by telling Manning that he was neither "under arrest" nor "in custody." Gov't Ex. 1A at 2. Manning confirmed that he understood Agent Johnson's admonitions by responding "[o]kay" and "[y]eah." Gov't Ex. 1A at 2; *see Giboney*, 863 F.3d at 1028 (explaining that the defendant "confirmed his understanding" that he was not in custody by responding "Ok" and "That's fine"). Then, Agent Johnson told Manning that he could tell her to "pound sand" or tell her that he was "never gonna talk." Gov't Ex. 1A at 2. These statements conveyed that Manning could terminate the questioning and leave.

Likewise, the presence of the third mitigating factor weighs against finding that Manning was in custody. Agent Johnson "asked Mr. Manning if he would speak to

[her] in a separate room." ECF No. 42 at 16. Manning agreed to talk, and—without any handcuffs or other coercion—accompanied Agent Johnson to a room where they could speak. *See* ECF No. 42 at 16, 18-19. At the beginning of questioning, Manning indicated his desire to truthfully answer Agent Johnson's questions. *See* Gov't Ex. 1A at 2. Manning further demonstrated "voluntary acquiescence" by cooperating with law enforcement during the execution of the search warrant. Manning identified which computers belonged to him, told law enforcement which computers he used and which ones his father used (Manning lived with his father), shared the WiFi password and the desktop computer password, and disclosed his email addresses. Gov't Ex. 1A at 6-10; *see United States v. Axsom*, 289 F.3d 496, 502 (8th Cir. 2002) (stating that the defendant's "extremely friendly and cooperative" conduct during the interview "supports a finding of voluntary acquiescence"). Taken together, Manning's cooperation and willingness to provide truthful answers to the officers' questions amount to voluntary acquiescence.[5]

At least two of the three aggravating factors are not present in this case. The BCA did not arrest Manning after the interrogation concluded. And nothing suggests

---

[5]Manning argues that the third mitigating factor is actually absent because he did not initiate contact with the BCA. ECF No. 47 at 14. Manning makes the same mistake that the Eighth Circuit cautioned against in *United States v. Axsom*, 289 F.3d 496, 501 (8th Cir. 2002). The third mitigating factor is stated in the disjunctive: "whether the suspect initiated contact with authorities *or* voluntarily acquiesced to official requests to respond to questions." *Laurita*, 821 F.3d at 1024 (emphasis added). Manning did not initiate contact with the BCA, but he did voluntarily answer questions, and thus the third mitigating factor is present. *See Axsom*, 289 F.3d at 501.

that the BCA used strong-arm tactics or deceptive stratagems.[6] As to the final aggravating factor: Manning argues that the atmosphere was police dominated. Agent Johnson testified that about nine officers came to Manning's residence to execute the search warrant. ECF No. 42 at 27. During interrogation, Agent Johnson sat next to Manning on the arm of a love seat while another officer sat on a chair between Manning and the (closed) door to the (small) room. *See* ECF No. 42 at 21-22, 32-34. Agent Johnson directed Manning to remain seated during questioning even though he told her that he wanted to stand. ECF No. 42 at 33.

The Court agrees that the atmosphere was somewhat police dominated—although not as police dominated as, say, questioning at a police station or in the back of a moving squad car. *See Axsom*, 289 F.3d at 502 ("When a suspect is interrogated in the comfort and familiarity of his home, a court is less likely to find the circumstances custodial."). But the presence of this aggravating factor is not sufficient to create custody because "[a]ny warrant search is inherently police dominated," *United States v. Perrin*, 659 F.3d 718, 721 (8th Cir. 2011), and the Eighth Circuit has "refused to find

---

[6] Manning argues that Agent Johnson used deceptive tactics by assuming that Manning was guilty and minimizing the moral seriousness of his offense. *See* ECF No. 47 at 15-17. The Court disagrees. "[N]o one menaced or tricked" Manning into making incriminating statements. *United States v. Bordeaux*, 400 F.3d 548, 560 (8th Cir. 2005). Instead, Agent Johnson used "permissible small talk and rapport-building techniques to make [the defendant] more comfortable with the difficult subject matter and to gain [the defendant's] trust and goodwill." *United States v. Plumman*, 409 F.3d 919, 924 (8th Cir. 2005).

custody in circumstances where the atmosphere was much more police dominated" than here, *Giboney*, 863 F.3d at 1028 (collecting cases).

Taking into account "the totality of the circumstances," the Court finds that a reasonable person in Manning's position "would have felt at liberty to terminate the interrogation and leave." *Laurita*, 821 F.3d at 1024. Thus, Manning was not in custody, and the law-enforcement officers who questioned him were not required to provide *Miranda* warnings. Manning's motion to suppress the statements that he made to Agent Johnson is accordingly denied.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, the Court OVERRULES Manning's objection [ECF No. 56] and ADOPTS the November 1, 2018 R&R [ECF No. 55] to the extent that it is consistent with this order. IT IS HEREBY ORDERED THAT:

1. Manning's motion to suppress statements [ECF No. 22] is DENIED.

2. Manning's motion to suppress evidence [ECF No. 26] is DENIED.

Dated: January 2, 2019    s/Patrick J. Schiltz
　　　　　　　　　　　　　Patrick J. Schiltz
　　　　　　　　　　　　　United States District Judge